## MAYOR OF CITY OF JACKSON v. LOWELL THOM-AS et al. —313 S. W. (2d) 468.

Western Section, at Jackson. July 25, 1957.

Certiorari denied by Supreme Court December 6, 1957.

Russell Rice, Jackson, for appellants.

James H. Boswell, George L. Morrison, Jackson, for appellee.

AVERY, P. J. (W. S.). Acting by authority of Section 13-911, T. C. A., the Mayor of the City of Jackson gave notice on September 19, 1956, which will be more particularly hereinafter referred to, to each of the above named defendants that:

"* * * your appointment as Commissioner for the Jackson Housing Authority is terminated effective October 5, 1956, subject however, to a hearing required by law if you desire such hearing, * * * October 4, 1956, at 10:00 A.M. in the Mayor's office in the City Hall, Jackson, Tennessee, said hearing as required by Section 13-911 Tennessee Code Annotated."

On the day set for said hearing, the Mayor issued a formal order in which it was recited that:

"* * * a hearing was held in the office of the Mayor upon certain charges made by this office"

and further:

"* * * the appointment of the above named members of the Jackson Housing Authority are terminated and such members are relieved of their duty * * * effective October 5, 1956."

On October 9, 1956, said members of the Jackson Housing Authority filed a petition in the Circuit Court of Madison County, praying for the issuance of a writ of certiorari to the City of Jackson and B. F. Graves, its clerk, requiring the certification of said record and such proceedings to the next term of the Circuit Court and praying that the case be reviewed de novo, and that the order of the Mayor removing said defendants as Commissioners of the Jackson Housing Authority be declared null and void.

On October 9, 1956, a Fiat was directed to the Clerk directing him to issue the writ as prayed for. The writ was issued to "City of Jackson, Inc., B. F. Graves, City Recorder". A record was filed in the Circuit Court, with certificate, copy of which appears at R. 7, in the following words and figures:

"In The Circuit Court of Madison County,
     Tennessee

"Lowell Thomas, et al.
  vs.     RD 1642
The Mayor of The City of Jackson

"Comes Leon Johnsey, the acting City Recorder of the City of Jackson, pursuant to the Writ of Certiorari issued the 9th day of October 1956 against the City of Jackson and B. F. Graves, City Recorder, and delivered into Court the following:

"1. Copy of charges preferred by the Mayor of the City of Jackson against the Honorable Milton Rampley, G. H. Berryhill, Doyle Carter and Lowell Thomas.

"2. Return receipts signed by each of the above indicating receipt of said charges on September 19, 1956.

"3. Findings of the Mayor of the City of Jackson pursuant to a hearing held October 4, 1956.

"4. Answer filed by Attorney James H. Boswell at said hearing on behalf of Messrs. Thomas, Berryhill, Rampley and Carter.

"Oral testimony was given at said hearing but no transcript of same is in this office.

"The above is all of the records in this office pertaining to the matter in question.

"In Witness Whereof I have hereunto set my hand and the seal of the City of Jackson this 11th day of October 1956.

/s/ "Leon Johnsey by Russell Rice,
    "City Atty.
    "Acting City Recorder"        (R. 7)

After the documents set forth in the certificate were filed in the Circuit Court, there was filed a document styled: "Demurrer and Answer of the Mayor of the City of Jackson and of the City of Jackson". This Demurrer and Answer will be more specifically referred to in this Opinion, but it should be said here raised the questions:

(1) That the action of the Mayor was not a judicial function within the meaning of Section 27-801, T. C. A.;

(2) That the action of the Mayor was authorized and done under Sec. 13-911, T. C. A. conferring that jurisdiction, and the record in the cause establishes "as a matter of law that the Mayor of the City of Jackson has acted within his jurisdiction * *";

(3) That no question of law exists and the writ should be dismissed;

(4) That Sec. 27-802 has no application to the action of the Mayor under Section 13-911, T. C. A.

As purely a Demurrer, it legally admits allegations in the petition, but as an Answer it admits some allegations of the petition and denies and explains others. Buice v. Scruggs Equipment Co., 194 Tenn. 129, 133, 134, 250 S. W. (2d) 44.

So far as this record indicates, the Circuit Court heard argument on the demurrer filed by the Mayor and City of Jackson, with the entire record before him as filed in his Court, and put down the following judgment:

"Order Overruling Demurrer and Final Judgment

"The demurrer of the Mayor of the City of Jackson and the City of Jackson to the Petition of Certiorari coming on for hearing on argument of counsel, the Court is of the opinion that the action of the Mayor of the City of Jackson was a judicial or quasi judicial function and that said demurrer is not well taken in any respect, and the same is hereby accordingly overruled.

"And upon this cause coming on to be further and finally heard by the Court without the intervention of a jury upon the whole record and argument of counsel, the Court finds that the charges brought by the Mayor of the City of Jackson and the City of Jackson against Petitioners did not constitute neglect of duty and the Court orders the Mayor's judgment of removal quashed. Costs of this cause shall be paid by Defendant for which let execution issue.

"Defendant prays an appeal from the foregoing judgment to the next term of the Supreme Court, which appeal is granted upon his executing bond as required by law.

"This November 2, 1956." (R. 22)

It will be noticed that the appeal was prayed to the Supreme Court of this State, was granted in accord with the prayer, and the record filed in the Supreme Court, where it was by that Court transferred for hearing to this Court. The Opinion was prepared by Justice Swepston of the Supreme Court and published in 202 Tenn. 26, 302 S. W. (2d) 56, which quotes only the second paragraph of the judgment of said Circuit Court set out above, after which quotation the Opinion of the Supreme Court contains the following paragraphs:

"It is, therefore, apparent that the case was not finally disposed of on demurrer but upon the whole record including the issues of fact made by the answer of the Commissioners to the charges of the Mayor and the answer of the Mayor and the City of Jackson to the petition for certiorari.

"Where the statute does not expressly cover a situation this Court has repeatedly held that the respective jurisdictions of this Court and the Court of Appeals depends upon the method of trial in the Lower Court. Goins v. Yowell, 199 Tenn. 167, 285 S. W. (2d) 135."

Though there is no evidence in this record, it is the duty of this Court to accept the mandate of the Supreme Court, review the record and determine the rights of the parties to this proceeding.

The Assignments of Error in this Court are only two:

(1) "The Court erred in overruling the demurrer of the respondent which in words and figures is as follows:

" 'Demurrer And Answer of the Mayor and the City of Jackson and of the City of Jackson

" 'The City of Jackson and the Mayor of the City of Jackson demur to the petition filed against it in the above cause for the following reasons:

" '1. The action of the Mayor of the City of Jackson complained of is not a "judicial function" within the meaning of Section 27-801 Tenn. Code Annotated but instead is purely an administrative function of the Mayor of the City of Jackson authorized by Section 13-911 T. C. A. and, therefore, no grounds exist for the issuance of the Writ of Certiorari as prayed or the granting of the relief prayed.

" '2. The records in this cause indicate conclusively that the action complained of the Mayor of the

City of Jackson was authorized by and done in exact conformity with the provisions of Section 13-911 T. C. A. which section plainly confers jurisdiction upon the Mayor of the City of Jackson to relieve Commissioners of the Jackson Housing Authority, and, therefore, establishes as a matter of law that the Mayor of the City of Jackson has acted within his jurisdiction and in a legal and proper manner and for these further reasons the petition and the writ of certiorari should be dismissed.

" '3. The records in this cause conclusively indicate that the Mayor of the City of Jackson has acted within his jurisdiction and in a lawful manner under the provisions of Section 13-911 and that no question of law exists, therefore said petition and writ should be dismissed.

" '4. Section 27-802 has no application to an action of the Mayor under the provisions of Section 13-911 T. C. A.' "

(2) "The Court erred in quashing the order of the Mayor as such action, without proof of any type, constitutes the substitution of the discretion of the Trial Judge for the discretion of the Mayor of the City of Jackson in disregard of provisions of Section 13-911 T. C. A. specifically vesting such discretion in the Mayor of the City of Jackson and for the further reason that the order of the Mayor was lawful in every respect."

The record in this Court is in such condition that this Opinion should minutely set forth certain documents

appearing in this record. This case had its origin in a notice sent by registered mail to each of the defendants, being four members of the Jackson Housing Authority, and except for the name of the Commissioner, these particular notices are identical. Though a copy of each of them appears in the record, only one will be here copied as follows:

"September 19, 1956

"(Addressed to each Commissioner)

"Dear Sir:

"Please be advised your action in voting for a resolution terminating the employment of the Executive Director of the Jackson Housing Authority effective September 18, 1956, without cause assigned and without the Executive Director being given any hearing on any charges against him, if any exist, constitutes neglect of duty, damage to the morale of all employees of the Jackson Housing Authority and contrary to all American principles of fair play, all of which are not in the best interest of the Jackson Housing Authority. For the above reason your appointment as Commissioner for the Jackson Housing Authority is terminated effective October 5, 1956, subject however, to a hearing required by law if you desire such hearing.

"If you care to be heard in connection with these charges, either in person or by counsel, the Mayor of the City of Jackson will conduct a hearing on said charges October 4, 1956, at 10:00 A.M. in the Mayor's office in the City Hall, Jackson, Tennessee,

said hearing as required by Section 13-911 Tennessee Code Annotated.

"The City of Jackson

"By ————————————————
     Mayor"

(R. 10)

It will be observed that this notice in effect embraces three designations of dereliction as follows:

(1) In introducing the resolution terminating the employment of the Executive Director;

(2) Voting for the resolution to discharge the Executive Director, without cause assigned;

(3) Without giving the Executive Director a hearing on charges against him.

The notice then sets forth that these three acts "constitute neglect of duty", etc.

The four Housing Commissioners so charged responded to that notice by what is termed their "Answer". The second paragraph of said Answer states that they did on September 18, 1956, vote to terminate the employment of James D. Gilbert as Executive Director, and that of the five Commissioners, four voted for and one against removing the Director. The third paragraph specifically denies that "they were guilty of neglect of duty in so acting" and avers that they were in the exercise of their duty as provided in Sections 13-908 et seq., T. C. A., pointing out the fact that said Sections of T. C. A. authorized them to employ a secretary who shall be Executive Director, technical experts

and such other officers, agents and employees, permanent and temporary, as may be required, and shall determine their qualifications, duties and compensation.

The fourth paragraph of the Answer quotes Sec. 13-909, T. C. A., which is as follows:

"The authority and its commissioners shall be under a statutory duty to comply or to cause compliance strictly with all provisions of the Housing Authorities Law and the laws of the state in addition thereto with each and every turn, provision and covenant in any contract of the authority on its part to be kept or performed."

The Answer then sets out ten specific reasons why the Commisisoners relieved Mr. Gilbert as such Director, as follows:

"1. On July 16, 1956, the Chairman of the Board was notified by the Public Housing Authority that the operating budget for the Jackson Housing Authority for the next fiscal year was delinquent and that said delinquency was in violation of the contract between the Jackson Authority and the Public Housing Authority. The PHA stated that three letters written to Mr. Gilbert about the matter had not been answered, and the Board was requested to expedite the submission of said budget.

"2. A Management Review Report made by the Public Housing Authority in August, 1956, contained the following statement: 'A serious administrative deficiency noted was failure of the Authority to reply promptly to correspondence from the PHA Regional Office.'

"3. Mr. Gilbert also had been delinquent in submitting the budget for the fiscal year beginning October 1, 1954.

"4. Certain recommendations made in March, 1955, by the Public Housing Authority in regard to upkeep and repairs at the various projects had not been carried out as of July, 1956, when the PHA made its annual inspection.

"5. Although Mr. Gilbert complained of being undermanned, he delayed the hiring of a qualified project manager at Parkview Courts. As a result of his attitude, it became necessary for the Board to change its bylaws and personnel policy in order to employ this manager.

"6. Mr. Gilbert allowed too many rental accounts to become delinquent and go uncollected, although the Board had repeatedly instructed him to correct this situation.

"7. Mr. Gilbert failed to obtain bids for the purchase of playground equipment at Parkview Courts Project, which was completed in July, 1952. As a result of his failure the money allotted for said equipment out of the development fund is no longer available inasmuch as such equipment must be purchased within two years from the date of completion of said project.

"8. Mr. Gilbert also had been directed to obtain bids for playground equipment and an office safe at Lincoln Courts Project, which was completed in September, 1954, but no bids have been submitted to

the Board for the purchase of this equipment, and funds for same are no longer available.

"9. Mr. Gilbert, in violation of the rules and regulations of the Authority, not only cashed his personal checks out of cash funds of the Authority, but also has borrowed money from said fund. On numerous occasions the bank deposits of the Authority have been delayed until such borrowed money was replaced. The following is quoted from the Audit Report of September 30, 1954: 'The records show that a total cash advance of $500.00 has been made to Executive Director Gilbert for the purpose of future travel needed. This is a strict violation of the annual contributions contract.' According to the records of the Jackson Authority, the said $500.00 was not returned until April 16, 1955.

"10. On or about July 30, 1956, garnishment papers were served on the Chief Accountant of the Authority ordering him to hold any sums owing to Mr. Gilbert for the application of said sums to a judgment rendered against Mr. Gilbert in the General Sessions Court in the Case of Dowling vs. Gilbert, R. D. No. 15223. Judgment also was rendered against Mr. Gilbert in May, 1955, on an account in the General Sessions Court in the case of Wells & Lassiter vs. Gilbert, R. D. No. 13676."

(R. 14, 15)

The Answer closes with a denial of neglect of duty and contains the following concluding paragraph:

"Your Commissioners, therefore, request that the charge of neglect of duty made against them be

dismissed, and the order removing them from office be rescinded."

(R. 16)

This Answer is not sworn to and there is nothing appearing in the record before us as to when it was filed with the Mayor or with the City of Jackson. However, on October 4, 1956, the record shows that the Mayor directed a communication to the City Recorder, which indicates that a carbon copy thereof was sent to each of the four defendants, reading as follows:

"October 4, 1956

"Mr. B. F. Graves
"City Recorder
"Jackson, Tennessee

"Dear Mr. Graves:

"On October 4, 1956, at 10:00 a.m. a hearing was held in the office of the mayor upon certain charges made by this office against Mr. Lowell Thomas, Dr. G. H. Berryhill, Mr. Doyle B. Carter and Mr. Milton O. Rampley, former commissioners of the Jackson Housing Authority. Attached hereto are copies of the charges preferred against these f o u r gentlemen in letter form. All four of the above named parties were notified of such hearing more than ten (10) days prior thereto and were present at the hearing and represented by counsel.

"It is the opinion of this office following such hearing that the four former members of the Jackson Housing Authority; namely, Mr. Lowell Thomas, Dr. G. H. Berryhill, Mr. Doyle B. Carter and Mr. Milton O. Rampley, did on September 18, 1956, dis-

charge the executive director of the Jackson Housing Authority without cause assigned and without the executive director being given any hearing on any charge against him and (2) that said former members did refuse to advise the fifth member of the Board of Commissioners of the reasons of such discharge although asked in open meeting for such reasons, and that such action constitutes neglect of duty damaging to the morale of all employees of the Jackson Housing Authority and contrary to all American principles of fair play and is not in the best interest of the Jackson Housing Authority. Said action took place within a few days after this office strongly expressed to the chairman of the Jackson Housing Authority its opposition to any employee of an agency of the City of Jackson being discharged at any time without cause assigned and without a fair and impartial hearing on said charges.

"For the reasons herein stated the appointment of the above named members of the Jackson Housing Authority are terminated and such members are relieved of their duty as members of the Jackson Housing Authority Board of Commissioners effective October 5, 1956.

"/s/ George Smith
Mayor

"cc:

"Mr. Lowell Thomas
"Dr. G. H. Berryhill
"Mr. Doyle B. Carter
"Mr. Milton O. Rampley"

(R. 8)

Following the Order immediately set out above, on October 9, 1956 a petition for certiorari was presented to the Honorable Mark Walker of the Circuit Court of Madison County, in which they sought writ of certiorari to have the proceedings reviewed in said Court. In that petition they referred to the facts in a general way which led up to the Order of the Mayor issued October 5, 1956, hereinbefore set out. In this petition for the writ, which petition is sworn to by each of said four Commissioners, they aver that the record of the hearing before the Mayor is in the possession of the City Recorder, B. F. Graves, in the City Hall in Jackson, Tennessee. The principal reasons assigned for seeking the writ are as follows:

"That the Mayor refused to allow them to state their reasons for discharging the said Gilbert. That the Mayor introduced no proof of the charge against them other than the resolution of the Board terminating the said Gilbert's employment. That following said hearing the Mayor found your Petitioners guilty of neglect of duty for the following reasons (1) discharging Mr. Gilbert without a hearing and (2) not advising the fifth member of the Board (Commissioner Wall) in open meeting of their reasons for discharging Mr. Gilbert. Your Petitioners would show that Mr. Gilbert was not present at the hearing nor was Commissioner Wall Present to testify or be cross examined by your Petitioners.

"Your Petitioners charge that they were not given a fair and impartial hearing. That the Mayor George Smith assumed the position of prosecutor and judge and had prejudiced the hearing against

them; that there was no legal competent or adequate evidence presented at the hearing which justified their removal as Commissioners of the Jackson Housing Authority. That under the Housing Authorities Law of the State of Tennessee and the By-Laws of the Jackson Housing Authority your Petitioners as Commissioners are given the right to determine the qualifications of its employees and are not required or under any duty to give any employee a hearing, and the charge of neglect of duty is groundless.

"Your Petitioners would further show that the Housing Authorities Law of Tennessee does not provide an appeal from the findings of the Mayor in such causes, and make application to Your Honor for relief provided under Section 27-802 Tenn. Code Annotated." (R. 3)

The petition, after praying for a writ of certiorari to issue directing the records in said hearing to be certified to the Circuit Court, contained the following prayer:

"Petitioners also pray they be given an opportunity to present their case and that the matter be heard de novo before your Honor and that the order of the Mayor removing your Petitioners as Commissioners of the Jackson Housing Authority, be declared null and void and your Petitioners be given such other and general relief as they are entitled. Petitioners also pray that notice of the awarding of the writ be given to the said George Smith, Mayor of the City of Jackson." (R. 4)

We have hereinabove made substantial reference to the Answer, in addition to what we have heretofore said. It states:

(1) That the petition does not correctly set out the facts, but that "instead that the correct findings of the Mayor is as set forth in the record of this cause filed in this Court pursuant to the writ of certiorari". (R. 18)

(2) It denies the allegations of paragraph 5 of said petition except it "admits that the Board of Commissioners of the Jackson Housing Authority has the naked legal right to discharge an employee and that no statutory requirements exist requiring a hearing, but avers that the Statutes of the State of Tennessee governing Housing Authorities of the various cities and the Jackson Housing Authority in particular provides for the Commissioners of the Jackson Housing Authority to be appointed by the Mayor of the City of Jackson, and provides further that said Commissioners may be relieved by the Mayor of the City of Jackson upon notice of charges against them at least ten days prior to a hearing on said charges, at which hearing they may appear in person or by counsel (T. C. A. 13-908 and T. C. A. 13-911); that said statute makes express provisions for the bringing of charges against such Commissioners by the Mayor and for the conduct of a hearing on same by the Mayor;" etc. (R. 18)

(3) It avers that the Jackson Housing Authority is nothing more than a mere agency or instrumentality of the City of Jackson and subject to the overall control of the elected officials of the City, and, in

particular, to the "supervision and control of the Mayor of the City of Jackson" to the same effect as other boards of the City of Jackson, and is responsible to the Mayor for the way it treats its employees and all other activities.

(4) It avers that "no elected official of the City of Jackson has ever advised the Jackson Housing Authority Board not to fire Mr. Gilbert, nor has the naked authority of the Jackson Housing Authority to discharge its employees been questioned". (R. 19)

(5) It avers that "prior to the discharge of Mr. Gilbert the Mayor of the City of Jackson advised the former Jackson Housing Authority Board that before Mr. Gilbert was discharged from the position of the Executive Director of the Jackson Housing Authority he should be advised of the charges against him and given an opportunity for a fair and impartial hearing before the Board of Commissioners of the Jackson Housing Authority; that notwithstanding such statement of policy by the Mayor the Jackson Housing Authority Board of Commissioners on September 18 discharged Mr. Gilbert without cause assigned and without a hearing," etc. (R. 19)

(6) It also avers that "the four named petitioners refused to give any reason for such action to the fifth member of the Jackson Housing Authority Board and advised such Commissioner, Mr. C. C. Wall, Jr., that they did not have to give him any reason". (R. 19)

(7) That not until the four Commissioners were notified by the Mayor of the City of Jackson of his intention to relieve said petitioners, did the petitioners produce any reasons or charges for the discharge of Mr. Gilbert.

(8) The Answer then recites the fact that title to the property involved is held by the Jackson Housing Authority as a matter of convenience, but that said property is still the property of the City of Jackson and its citizens and the Jackson Housing Authority, although incorporated, has never been anything more than ''an arm or agency of the City of Jackson and the sovereign character of the City's ownership is not changed by the creation of the corporation as a convenient means through which the City exercises the strictly governmental function of providing low cost housing to its citizens''. (R. 20)

(9) The Answer closes with the following statement: ''For further answer respondents respectfully state that the Mayor of the City of Jackson is awarded express jurisdiction to relieve a Commissioner of the Jackson Housing Authority for the undefined reasons of 'inefficiency or neglect of duty or misconduct in office'; that the requirements of the statutes concerned have been complied with in detail; and that for the above reasons the petition should be dismissed.'' (R. 20)

The learned Judge, with the record before him in the condition herein recited, entered the judgment heretofore shown on page 3 of this Opinion.

The law creating housing authorities in this State is designated "The Housing Authorities Law" and begins with Chapter 20 of the Public Acts of 1935. In T. C. A. it is contained in Chapters 8 to 12 inclusive, headed as follows: "Housing Authorities In General"; "City Housing Authorities"; "County And Regional Housing Authorities"; "Bonds And Finances Of Housing Authorities"; and "Slum Clearance". The T. C. A. Sections embracing these chapters are 13-801 to 13-1209, as designated in Volume 3.

In Section 13-802, defining terms used in the Act, the term "Authority" or "Housing Authority" is defined to mean "a public body and a body corporate and politic organized in accordance with the provisions of the Housing Authorities Law for the purposes, with the powers and subject to the restrictions hereinafter set forth". Sub-section (1).

"Commissioner" is defined to mean "one (1) of the members of an Authority appointed in accordance with the provisions of the Housing Authorities Law". Sub-section (6).

On page 505 of Volume 3, T. C. A. is the beginning of Section 13-804 of said Housing Authority Act. This Section is designated "Powers of housing authority". These powers are set out under numerical heads in said Section, numbered 1 to 32 inclusive, and are all-embracing in their terms. We refer to just three of these powers at this time—Section 13-804, Subsection (4), "to prepare, carry out and operate housing projects"; Subsection (7), "to manage as agent of any city or municipality located in whole or in part within its boundaries any housing project constructed or owned by such city";

and Sub-section (8), "to act as agent for the federal government in connection with the acquisition, construction, operation and/or management of a housing project or any part thereof".

Section 13-908, T. C. A. which falls under the general heading of "City Housing Authorities", provides for the appointment, qualification, tenure of office, and organization of the Commissioners.

Section 13-909, T. C. A., prescribes the duties of the Commissioners, and is as follows:

"The authority and its commissioners shall be under a statutory duty to comply or to cause compliance strictly with all provisions of the Housing Authorities Law and the laws of the state and in addition thereto with each and every term, provision and covenant in any contract of the authority on its part to be kept or performed."

Section 13-910 defines certain "misconduct in office" and is as follows:

"No commissioner or employee of an authority shall acquire any interest direct or indirect in any housing project or in any property included or planned to be included in any project, nor shall he have any interest direct or indirect in any contract or proposed contract for materials or services to be furnished or used in connection with any housing projects. If any commissioner or employee of an authority owns or controls an interest direct or indirect in any property included or planned to be included in any housing project, he shall immediately

disclose the same in writing to the authority and such disclosure shall be entered upon the minutes of the authority. *Failure to so disclose such interest shall constitute misconduct in office.*" (Emphasis added.)

Section 13-911 provides for the removal of a commissioner as follows:

"The mayor may remove a commissioner for inefficiency or neglect of duty or misconduct in office, but only after the commissioner shall have been given a copy of the charges against him (which may be made by the mayor) at least ten (10) days prior to the hearing thereon and had an opportunity to be heard in person or by counsel.

"Any obligee of the authority may file with the mayor written charges that the authority is violating willfully any law of the state or any term, provision or covenant in any contract to which the authority is a party. The mayor shall give each of the commissioners a copy of such charges at least ten (10) days prior to the hearing thereon and an opportunity to be heard in person or by counsel and shall within fifteen (15) days after receipt of such charges remove any commissioners of the authority who shall be found to have acquiesced in any such willful violation.

"A commissioner shall be deemed to have acquiesced in a willful violation by the authority of a law of this state or of any term, provision or covenant contained in a contract to which the authority is a party, if, before a hearing is held on the charges against him, he shall not have filed with the authority

a written statement of his objections to or lack of participation in such violation.

"In the event of the removal of any commissioner, the mayor shall file in the office of the city clerk a record of the proceedings together with the charges made against the commissioner and the findings thereon."

No provision is made in the "Housing Authorities Law" for an appeal from the action of the Mayor in discharging a commissioner or commissioners of housing authorities in cities. Therefore, it is the insistence of the involved commissioners that Sections 27-801 and 27-802 control the procedure to be followed if the commissioners are dissatisfied with the action of the Mayor in discharging them. The contention of the City and the Mayor is contrary thereto. These Sections are as follows:

Sec. 27-801. Constitutional basis.—

"The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

Sec. 27-802. Cases in which writ lies.—

"Certiorari lies: (1) On suggestion of diminution; (2) where no appeal is given;" etc.

By Section 27-804 the judges of the circuit courts and chancellors are authorized to issue writs of certiorari in all civil cases.

200

Section 27-817 provides:

"Judgment for applicant.—

"On the final judgment, the court may, if the applicant obtain relief, direct the jury trying the cause to assess his damages, or may impanel a jury for that purpose, may order restitution of the property, or give such other judgment in the applicant's favor as the state of the case requires."

Inadvertent irregularities in this record are as follows:

"(1) The resolution terminating the employment of the Executive Director of the Housing Authority effective October 5, 1956, referred to in the notice sent out by the Mayor on September 19, 1956, does not appear in this record.

"(2) The Order issued by the Mayor on October 4, 1956, which appears to be a final removal, sets forth a ground or reason for their removal which was not contained in his notice of September 19, 1956. That ground is:

" '(2) that said former members did refuse to advise the fifth member of the Board of Commissioners of the reasons of such discharge although asked in open meeting for such reasons,' etc.

"(3) The transcript reveals no proof anywhere that the fifth member of the Commission, Mr. Wall, was not informed by the other members or some of them of the reasons why Mr. Gilbert was being discharged.

"If the facts set forth in the Answer to the Mayor's charges and the petition for certiorari are true,

and Mr. Wall had properly performed his duties, it is an indictment of his intelligence to say he did not know and understand why the Commissioners were disposing of Mr. Gilbert's services.

"(4) The certificate of the record of proceedings expressly states: 'Oral testimony was given at said hearing, but no transcript of same is in this office'."

In this state of the record, it is observed that, by said Section 13-911, it is made the duty of the Mayor, as set out in the last paragraph thereof, to:

"In the event of the removal of any commissioner, the mayor shall file in the office of the city clerk a record of the proceedings together with the charges made against the commissioner and the findings thereon."

If oral evidence was introduced before the Mayor, as set forth in the certificate referred to, which certificate states that the Mayor did not file such in that office,— the demurrer, which admits the truthfulness of the allegations in the petition for certiorari, is faced with the positive statement in that sworn petition, as follows:

"That the Mayor refused to allow them to state their reasons for discharging the said Gilbert. That the Mayor introduced no proof of the charge against them other than the resolution of the Board terminating the said Gilbert's employment."

If the demurrer should be considered as a motion to quash or to discharge the writ of certiorari, it faces the same legal obstacle,—that is, it admits the factual recitations of the petition, in the consideration of the demurrer

or motion, by the Court. Buice v. Scruggs Equipment Co., supra.

From the foregoing assignments, it will be observed that counsel for the City of Jackson and its Mayor earnestly contends that the action of the Mayor in removing the housing authority commissioners was purely administrative, final and in compliance with the foregoing Section 13-911 T. C. A., and was, therefore, neither a judicial act nor a quasi judicial act, but acting in an administrative capacity, his acts were strictly ministerial.

It is not necessary for us to determine whether the manner of the proceedings in the Circuit Court of Madison County would be the same in considering either a ministerial act of an inferior jurisdiction or a judicial or quasi-judicial act of an inferior jurisdiction. However, it would not be amiss for us to point out in this Opinion what we consider to be proper definitions and proper distinction between ministerial acts and judicial acts, and since the lower court has held that the action of the Mayor in the instant case was a judicial act or a quasi-judicial act, and that holding is attacked by plaintiffs-in-error, this Court should set at rest any question in that regard.

A ministerial act is: "Some act or duty imposed expressly by law, not by contract, or arising necessarily as an incident to the office, involving no discretion in its exercise, but mandatory and imperative." 34 Am. Jur. 853. Ballentine's Law Dictionary, 2nd Ed., p. 820.

A ministerial duty is: "An act which is absolute, certain, and imperative, involving the mere execution of a set task, the law which imposes it prescribing the time,

mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion.'' 42 Am. Jur. 900. Ballentine's Law Dictionary, 2nd Ed., p. 820.

A ministerial act is: ''An Act which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done.'' Cyc. Law Dictionary, 3rd Ed., p. 718.

''A ministerial act may be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority without regard to or the exercise of his own judgment upon the propriety of the acts being done.'' Vol. 2 Bouv. Law Dict., Rawle's Third Revision, p. 2219.

''A ministerial 'act' is one which a public officer is required to perform upon a given state of facts in a prescribed manner, in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed.'' 27 Words & Phrases, and Pocket Part, Ministerial Act.

A judicial act is: ''A determination of what the law is and the relation to some existing thing done or happened. Such an act is to be distinguished from a legislative act which predetermines what the law shall be for the regulation of future cases.'' Ballentine's Law Dictionary, p. 700.

''Judicial action is usually held to be an adjudication upon the rights of parties who, in general, appear or

brought before the tribunal by notice or process, and upon whose claims some decision or judgment is rendered." 10 Am. Jur. 534. Ballentine's Law Dictionary, 1954 Supp., p. 132.

Judicial acts are: "Acts requiring the exercise of some judicial discretion, as distinguished from ministerial acts, which require none." Cyc. Law Dictionary, 3rd Ed., p. 610.

A judicial act is: "An act performed by a court touching the rights of parties or property brought before it by voluntary appearance, or by the prior action of ministerial officers; in short, by ministerial acts". Vol. 1 Bouv. Law Dict., Rawle's Third Revision, p. 116.

A judicial act is: "An official act [which is the] result of judgment or discretion based on evidence received at hearing provided by law." 23 Words & Phrases, and Pocket Part, Judicial Act.

For other definitions of "Judicial Acts" and "Ministerial Acts", see Words & Phrases.

The distinction between a ministerial act and a judicial act is that "where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment the act is ministerial, but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists it is not to be deemed merely ministerial." 23 Words & Phrases, Judicial Act, p. 269.

It is also necessary that we notice the constitutional provision for the issuance of writs of certiorari.

In the Constitution of 1796, Art. 5, Sec. 6, is as follows:

"The judges of the superior courts shall have power, in all civil cases, to issue writs of certiorari, to remove any cause, or a transcript thereof, from any inferior court of record into the superior, on sufficient cause, supported by oath or affirmation."

Section 7, Article 5, of the 1796 Constitution is as follows:

"The judges or justices of the inferior courts of law shall have power, in all civil cases, to issue writ of certiorari, to remove any cause, or a transcript thereof, *from any inferior jurisdiction* into their court, on sufficient cause, supported by oath or affirmation." (Emphasis added.)

The Constitution of 1834 provides as follows:

"The judges or justices of such inferior courts of law as the legislature may establish shall have power, in all civil cases, to issue writs of certiorari to remove any cause, or transcript thereof, from any inferior jurisdiction into said court, on sufficient cause, supported by oath or affirmation."

The Constitution of 1870, Article 6, Section 10, is as follows:

"The Judges or Justices of the Inferior Courts of Law and Equity, shall have power in all civil cases, to issue writs of certiorari to remove any cause or the transcript of the record thereof, from any inferior jurisdiction, into such court of law, on sufficient cause, supported by oath or affirmation."

Compiler's Notes, T. C. A. Vol. 1, p. 638, on Art. 6, supra:

"The intention of this provision of the Constitution was to secure the writ of certiorari for the purposes stated, and not to abridge the power to provide the same remedy in other cases. The legislature has the power to regulate the constitutional writ of certiorari by extension, but not by abridgement of the right. Duggan v. McKinney, 1834, 15 Tenn. 21; Bouldin v. Lockhart, 1873, 62 Tenn. 262; Tennessee Cent. R. Co. v. Campbell, 1902, 109 Tenn. 655, 73 S. W. 112."

Our Supreme Court has said:

"Certiorari at common law performed the function of aid to a review and supervision of the proceedings of inferior boards and tribunals by a superior tribunal, not taking the place of appeal or writ of error, but bringing up the entire record in order to a determination whether there had been an absence or excess of jurisdiction, or a failure to proceed according to the essential requirements of the law. * * * [It] was a remedy in civil cases at common law." Conners v. City of Knoxville, 1916, 136 Tenn. 428, 189 S. W. 870, 871. See, also, Clements v. Roberts, 1920, 144 Tenn. 129, 230 S. W. 30.

Our Supreme Court also said:

"The writ of certiorari is in this State a constitutional writ, and has always had a more extended application than in England, and has been used for purposes unknown to the common law." Saunders v. Russell, 1882, 78 Tenn. 293; Tomlinson v. Board of

Equalization, 1889, 88 Tenn. 1, 12 S. W. 414, 6 L. R. A. 207.

The learned Justice Haywood in his excellent discussion of the case of Durham v. United States, 1817, 5 Tenn. 69, 73, declared:

"* * * this writ is of the highest utility and importance, * * * in curbing the excess of jurisdiction and in correcting its mistakes and errors."

In Section 13-910, T. C. A. quoted hereinabove, "misconduct in office" of a commissioner is in part defined.

"Misconduct in office" is further defined in the second paragraph of Sec. 13-911. The terms "inefficiency" and "neglect of duty" have not been defined in any part of the law so far as we have found. However, it will be noted that the charges filed by the Mayor do not charge "inefficiency" or "misconduct in office".

We approve the definitions of "a ministerial act" on the part of an official as defined in 42 Am. Jur. 900, hereinabove quoted, and supported by the definitions of the other authorities quoted and referred to herein. We also approve the definitions of "a judicial act" as being "An act resulting from judgment or discretion based upon evidence received at hearing provided by law", as hereinabove referred to and supported by the definitions of "judicial acts" quoted hereinabove.

Applying these rules to the action of the Mayor, authorized by Code Section 13-911 T. C. A., with respect to discharging a housing authority commissioner, and bearing in mind what the Housing Authorities Law has not defined as "neglect of duty", we can hardly under-

stand how he could have reached a conclusion that such offense had been committed, without being burdened with the exercise of judicial discretion. Certainly he judicially found that the parties were guilty of the acts set forth in his charge, and that that guilt was "neglect of duty".

Having so determined and with no provision made for an appeal from his judicial conclusions in that regard, Section 27-802 et seq., T. C. A., hereinabove quoted, is controlling regardless of whether the same procedure could have been had by common law certiorari without the aid of said statute.

The learned Judge, with the record in the condition before him as it now appears before us, and the applicable law, had no other alternative than to overrule the demurrer filed by the City and the Mayor to the petition for certiorari, and therefore Assignment of Error I in this Court is overruled.

Recurring now to the question raised by Assignment II, it will be observed that the Commissioners of the involved Housing Authority were appointed in accord with the following provisions set out in Sec. 13-902, T. C. A.:

"If it shall determine that either or both of the above enumerated conditions exist, the council shall adopt a resolution so finding (which need not go into any detail other than the mere finding) and shall cause notice of such determination to be given to the mayor who shall thereupon appoint, as hereinafter provided, five (5) commissioners to act as an authority."

It will therefore be seen that the Commissioners compose the "Authority". Their duties as defined in Sec. 13-908, among other things, are as follows:

"* * * it may employ a secretary (who shall be executive director), technical experts and such other officers, agents and employees, permanent and temporary, as it may require, and shall determine their qualifications, duties and compensation. An authority may call upon the corporation counsel or chief law officer of the city for such legal services as it may require or it may employ its own counsel and legal staff. An authority may delegate to one (1) or more of its agents or employees such powers or duties as it may deem proper."

There is no provision whatever in the general law or the Housing Authorities Law which requires the Commissioners to give any notice in connection with the termination of the services of its employees or any of them. There is nothing in this record that indicates any act on the part of the Commissioners constituting such Authority to designate any of its employees as either "permanent" or "temporary" employees. There is nothing in this record to indicate any action on the part of the City authorities, that is, the municipal board constituting the Mayor and said Commissioners, to regulate or define either "permanent or temporary employees of the Authority". Neither does the record indicate any action on the part of the Authority or the City Board to fix the term of office of any employee of the Authority, nor which fixes the term of employment of any employee of the Authority. There appears nothing in this record nor in the law which provides even that

such employees of the Authority, though they be permanent, shall continue such employment during their good behavior.

In Hawkins v. Kercheval, 78 Tenn. 535, is a case where a city policeman in the city of Nashville was discharged, or at least an attempt was made to discharge him. The Charter of the City of Nashville provides that the City Council is authorized to elect three police commissioners, whose duties are to select and appoint policemen of the city and certify their selection and appointment to the City Council, and their duties include—

"to hear and determine all complaints against any member of the police force for failure to properly discharge his duties, and remove the officer or party complained of, if need be, and fill vacancies in the police force as they may occur. All other questions and powers in regard to said police force are vested in the Mayor and city council."

The Mayor and City Council enacted an Ordinance by which it was provided:

"That each member of the city police shall hold office during his good behavior, but may at any time be suspended or removed for misconduct, or disobedience of orders, or incompetency, and may be suspended from pay for violation of discipline or orders."

One Hawkins was a sergeant in the police force, at a salary of $80 per month, which position and salary he had held and drawn for several years. A subsequent ordinance was passed by which his compensation was

reduced to $70 per month. Hawkins accepted the first monthly reduced payment under protest and continued so to do for approximately two years. He then brought suit against the City of Nashville for the difference in the amount he had received and the amount he would have been entitled to under the former ordinance. Immediately, the Mayor suspended Hawkins and gave notice of the fact under date of May 10, 1881. The charge was "insubordination, disobedience of the laws of the city and conduct unbecoming an officer, and in this you have instituted suit against the city, and are attempting to obtain by said suit what you claim as back pay", etc. The notice then provided that a hearing would be given the said Hawkins by the police commissioners who would try him on the charges made. The trial was postponed for 24 hours and in the meantime, an injunction proceeding was instituted, by which Hawkins obtained an injunction restraining his dismissal and trial on the charges set out. His injunction bill was answered by the Police Commissioners in which they insisted that:

"* * * the conduct of the complainant in bringing suit against the city, and being active in inducing other policemen to sue, was harassing and vexatious, and amounted to insubordination; that the charges were made by the mayor in good faith; that the commissioners examined the testimony, had jurisdiction of the charges preferred, exercised the same according to the forms of law, and, upon adequate testimony, rendered the verdict of removal."

At page 540 of the Opinion in that case, the Court said:

"The commissioners in acting as a board to hear and determine complaints made against a member of

the police, and remove him if need be, constitute a *quasi judicial tribunal,* whose duties can not be performed in the first instance by any other body. To enjoin them from acting would be to deprive the city of Nashville of the only mode provided by law for the settlement of the particular matters entrusted to them, and there is not the slightest warrant, nor the least necessity for the intervention of a court of chancery by its injunctive process with their *quasi judicial action.* The proceedings of such a tribunal may always be revised by the writ of certiorari, and its sentence annulled, or the proper judgment rendered by the circuit court: Durham v. United States, 4 Hayw. 54, 69 [5 Tenn. 54, 69]; Saunders v. Russell, 10 Lea 293 [78 Tenn. 293]. If the proceedings are absolutely void, the remedy of the policeman aggrieved would be by mandamus to be restored to his office.'' (Emphasis added.)

The case was finally heard in the Chancery Court which held the proceedings void because their charges did not constitute ''failure to properly discharge his duties''. The Supreme Court in that case said:

''It distinctly appears from the answer of the defendants in this case, as well as from the testimony of the defendants themselves, that the complainant was not guilty of any misconduct in his office, of disobedience of orders, or incompetency, and that he was not complained of, or tried for a failure to properly discharge his duties. His sole offense, in the eyes of the mayor and commissioners was in instituting a suit against the city, and attempting to obtain

certain back pay to which he thought himself entitled. It is impossible to see how the bringing of an action by the complainant, in good faith for the assertion of a supposed right, can be treated as 'a failure to properly discharge his duties' as a policeman.''

That case is important in considering the instant case before us, for the reason that the Court held the attempted discharge of a policeman to be a judicial act and, further, that as in that case, so in this the commissioners thought that they were not only acting within their rights and the law, but that they were performing a service in good faith necessary to the proper continuation and management of the Housing Authority, as required of them by the law, and in the proper performance of their duty. As was said in the Hawkins case, supra, it can hardly be seen how their action can be treated as a failure to properly perform their duties and thereby be guilty of ''misconduct in office'' or of ''neglect of duty''.

It is generally known what the objects and purposes of the Housing Authority statutes are, as compiled in the Sections of TCA herein referred to. Generally, the funds are advanced by the federal government and the local housing authority is charged with the responsibility to acquire land, erect suitable houses thereon to be occupied by families within a low income range. Such was the purpose of the Jackson Housing Authority. By express terms, it is a body corporate and politic and its powers are extensive.

By provision of the Act as hereinbefore shown, the Mayor in the set-up of a city housing authority is authorized to appoint five (5) commissioners, and the method

and manner and cause for which they might be removed is set out in the Act, though the causes are not set out except in general terms. The Mayor may remove for inefficiency, neglect of duty, or misconduct in office, a commissioner but only after the commissioner has been given notice of the charges, as required by the Act hereinbefore set out, and a hearing had thereon. The Mayor is not a member of the housing authority, has no right to attend its meetings, participate in its deliberations, or interfere in any way or manner with the method by which the Authority performs its duties.

The law does not prescribe any method by which the commissioners are to select their employees, nor does it provide any method by which the commissioners are to terminate the services of the employees.

The only case wherein the Mayor has attempted to dispense with the services of a commissioner or commissioners of such housing authority referred to in the briefs or found by the writer of this Opinion, is that of Jackvony v. Berard (LaRochelle, and Schmetz), in a decision by the Supreme Court of Rhode Island, 1941, 66 R. I. 290, 18 A. (2d) 889, 892. The defendants were commissioners of the Woonsocket Housing Authority. In that case, as in the instant case, the charges were instituted by the Mayor, but in that case there were 22 charges. The Court said that:

"* * * all of the mayor's charges 'may be boiled down to two substantial ones'. The first is that the commissioners were guilty of undue and unnecessary delay in selecting a site for the housing project, thereby endangering the acquisition of a federal

grant of money; the second is that the fifth commissioner, named Sherwood, was excluded by the four petitioners from their deliberations and activities, and that the latter carried on certain unauthorized and surreptitious dealings without the knowledge of the Authority in its official capacity.''

There is some similarity in connection with the above referred to second charge by the Mayor of Woonsocket and the charge by the Mayor of Jackson, as set forth in paragraph (2) of his final order of removal. The Rhode Island Supreme Court said:

''It is clear that charges of inefficiency, neglect of duty and misconduct in office must relate to and have a bearing upon the conduct of the petitioners only in connection with the performance of their duties under the statute as commissioners of the Woonsocket Housing Authority. Any other kind of inefficiency, neglect or misconduct is obviously immaterial as far as removal proceedings are concerned. Viewed in that light, we have examined the charges made by the mayor and find that many of them are so vague and irrelevant that they furnish no reasonable grounds, under the statute, for removal of the petitioners from their offices.''

It is observed that the notice given the Commissioners by the Mayor can in no wise be construed to defend any misconduct in office by Mr. Gilbert known to the commissioners. Neither can his final judgment be construed to mean that Mr. Wall did not know the reasons why the Commissioners were dispensing with Mr. Gilbert's services. The Mayor complained only of the alleged procedure used in dispensing with the services of Mr. Gilbert.

It was evidently the Opinion of the Court below in the instant case that the entire record considered from a factual standpoint, since there is no transcribed nor narrated evidence in the entire file, merely shows that the commissioners were in the exercise of their best judgment and that they, in good faith, conscientiously felt that it was necessary to the successful performance of their duties, for which they received no compensation, and to the successful performance of the Jackson Housing Authority project, to dispense with the services of Mr. Gilbert. No other conclusion can be reached by this Court than that which seemed to have been the opinion of the Court below. Evidently, both the Mayor and the Housing Authority commissioners were conscientiously trying to perform their respective duties and the obligations resting upon them as such officials. However, with no facts shown in this record that dispensing with the services of Mr. Gilbert by the Housing Authority commissioners in any wise disturbed any other employees of the Housing Authority, or was not in the interest of the successful operation of the Housing Authority, or in violation of the law, the fact that their method of procedure in dispensing with the services of Mr. Gilbert is not in harmony with what the Mayor considered proper and for the best public policy and public relationship, could not be classified as neglect of duty, inefficiency or misconduct in office.

The result is that the Assignments of Error are overruled, and the judgment of the Circuit Court of Madison County affirmed. Judgment will be entered in accord with this Opinion and with costs.

Carney and Bejach, JJ., concur.